IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VSI SALES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL FIDELITY INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 15-507-GMS |

## MEMORANDUM

### I. INTRODUCTION

On June 16, 2015, plaintiff VSI Sales, LLC ("VSI") filed this lawsuit against defendant International Fidelity Insurance Company ("IFIC"). (D.I. 1.) In its complaint, VSI alleges that IFIC acted in bad faith and breached the implied covenant of good faith and fair dealing. (*Id.* at 13.) Presently before the court is IFIC's motion to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 5.) For the reasons that follow, the court will grant the motion.

### II. BACKGROUND

The facts underlying this case are the same as in a case VSI earlier filed in this court, *VSI Sales LLC v. Griffin Sign, Inc.*, No. 13-1970-GMS ("Pending Litigation"). The Delaware Department of Transportation awarded Cherry Hill Construction, Inc. ("Cherry Hill") a contract to act as general contractor on a highway construction project in New Castle County, Delaware ("Project"). (D.I. 1 at ¶ 9.) In June 2011, Cherry Hill entered into a subcontract ("Cherry Hill Subcontract") with Griffin Sign, Inc. ("Griffin"). (*Id.* at ¶ 10.) IFIC, as surety, issued a

Subcontractor Labor and Material Payment Bond ("Bond") on behalf of Griffin as principal and Cherry Hill as obligee. (D.I. 1, Ex. A.)

Griffin subsequently entered into a contract with VSI for VSI to supply certain construction materials for the Project ("Griffin-VSI Contract"). (D.I. 1 at ¶ 10.) A dispute arose between Griffin and VSI, and on November 1, 2013, VSI submitted a proof of claim to IFIC for payment under the Bond. (*Id.* at ¶ 43.) On November 22, 2013, VSI filed suit against Griffin and IFIC seeking recovery of unpaid invoices, and Griffin asserted a counterclaim for breach of contract. (Pending Litigation, D.I. 1; D.I. 23.) On June 16, 2015, VSI brought the current action against IFIC, alleging that IFIC acted in bad faith and breached the covenant of good faith and fair dealing by improperly handling VSI's claim under the Bond. (D.I. 1 at ¶¶ 89, 93.)

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The issue for the court is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). As such, the touchstone of the pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir. 2012). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim

2

for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

The parties dispute whether the court should apply Pennsylvania or Delaware law.[1] The court must follow the conflict-of-laws rules applied by Delaware state courts. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Delaware courts apply the "most significant relationship" test to determine which state's laws should apply.[2] *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). But "Delaware courts will generally honor a contractually-designated choice-of-law provision so long as the jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Construction Co., Inc. v. Mid-West Conveyor Co., Inc.*, 750 A.2d 518, 520 (Del. 2000).

VSI asserts that Delaware law applies because the Cherry Hill Subcontract includes a Delaware choice-of-law provision. According to VSI, its claims are brought under the Bond, and the Bond incorporates the Cherry Hill Subcontract (and all of its provisions) by reference. IFIC, on the other hand, argues that Bond does not include a choice-of-law provision, and that the

---

[1] IFIC argues that VSI's claim should be dismissed because Pennsylvania law does not recognize 1) a claim of bad faith brought against a surety; or 2) a claim for the breach of the implied covenant of good faith and fair dealing. *See Bd. Of Trustees, Roofers Union Local 30 Combined Health & Welfare Fund v. Liberty Mutual Ins. Co.*, C.A. 15-2820, 2015 WL 4273584, at *3 (E.D. Pa. July 14, 2015) ("A common law bad faith tort claim does not exist in Pennsylvania; rather, parties alleging bad faith on the part of an insurer may bring such claims only under 42 Pa.C.S.A. § 8371."); *E. Steel Connectors, Inc. v. St. Paul Mercury Ins. Co.*, Nos. 972, 973, 989, 1003 WDA 2001, at 5 (Pa. Super. Ct. August 2, 2002) (affirming trial court's dismissal of statutory bad faith claim against surety because "a surety contract is not an 'insurance policy' within the meaning of [§ 8371]."); *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002) ("Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing.").
   VSI argues that Delaware law should apply to its claims, and that there is no prohibition against its claims in Delaware. *See Int'l Fid. Ins. Co. v. Delmarva Sys. Corp.*, No. 99C-10-065, 2001 WL 541469 (Del. Super. Ct. May 9, 2001) (holding a bad faith claim may be brought by a principal against a surety).
[2] Under the most significant relationship test, the court applies the law of the state which has the most significant relationship to the occurrence and the parties. Restatement (Second) of Conflict of Laws, §§ 145(1), 188(1).

3

provision from the Cherry Hill Subcontract does not apply to this dispute.[3] The court agrees with IFIC.

Several courts have recognized that "the incorporation by reference of a contract into a bond is not intended to bring the substantive provisions of the contract into the bond. Instead, as these courts have held, incorporating the contract by reference merely establishes the limits of the surety's obligation and aids in ascertaining the measure of performance required." *U.S. Pac. Builders, Inc. v. Mitsui Trust & Banking Co.*, 57 F. Supp. 2d 1018, 1026 n.6 (D. Haw. 1999) (internal quotations omitted).[4] Further, neither VSI nor IFIC are parties to the Cherry Hill Subcontract. The court finds the Bond does not incorporate the choice-of-law provision.

Even assuming the choice-of-law provision is imported by reference from the subcontract to the bond, its terms do not apply to this case. Before applying a choice-of-law provision to a claim, Delaware courts examine whether the contracting parties drafted the provision broadly or narrowly. *See Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*, 832 A.2d 116, 124 (Del. Ch. 2003). Courts have held that choice-of-law provisions that explicitly apply to "any claim arising out of or relating to" a contract are broad enough to cover quasi-contract and tort claims arising from contractual agreements. *See id.*; *Eby v. Thompson*, No. 03C-10-010, 2005 WL 1653988, at *3 (Del. Super. Ct. April 20, 2005). Courts have held that narrow choice-of-law

---

[3] IFIC also notes that according to VSI, the relationship and agreement between VSI and Griffin—which underlie VSI's claims against IFIC—are governed by VSI's Terms & Conditions. (D.I. 1 at ¶¶ 12–14.) VSI's Terms & Conditions include a Pennsylvania choice-of-law provision. (Pending Litigation, D.I. 1, Ex. F.)

[4] *See, e.g., AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 781 (8th Cir. 2001) (declining to import a construction contract's arbitration clause into a performance bond because the purpose of the incorporation clause "was to clarify the extent of the surety's secondary obligation."); *Transamerica Ins. Co. v. Yonkers Contracting Co.*, 49 Misc. 2d 512, 513–14 (N.Y. Sup. Ct. 1966) (finding no evidence that surety intended to be bound by arbitration agreement in subcontract that was incorporated into bond by reference); *Downington Area School Dist. v. Int'l Fidelity Ins. Co.*, 671 A.2d 782, 788 (Pa. Commw. Ct. 1996) (finding the "clause incorporating the Contract into the Performance Bond only sets out the condition of [the surety's] liability rather than the scope of that liability.").

provisions that do not include such expansive language apply only to claims directly arising from the contracts themselves. *See Gloucester*, 832 A.2d at 124; *Huffington v. T.C. Group, LLC*, No. N11C-01-030, 2012 WL 1415930, at *11 (Del. Super. Ct. April 18, 2012) ("The choice of law provision, without language such as *arises out of or relates to*," only requires the Court to apply Delaware law to claims challenging the terms and provisions of the Subscription Agreement." (emphasis in original)).[5]

Here, the Bond itself does not include a choice-of-law provision, but states that the Cherry Hill Subcontract "is by reference incorporated herein." (D.I. 1, Ex. A.) The Subcontract states that "*[t]his subcontract* shall be governed by and construed in accordance with the laws of the State where the Project is located."[6] (D.I. 28, Ex. 2 at 6 (emphasis added).) The narrowness of this provision restricts its application to contractual disputes arising directly from the Subcontract. The provision does not apply more broadly to conflicts arising from the Bond. Accordingly, no contractual choice-of-law provision applies to this lawsuit.[7]

---

[5] *See also Yarger v. ING Bank, fsb*, 285 F.R.D 208, 322 (D. Del. 2012) (finding choice-of-law provision in mortgage instruments did not cover claims arising from subsequent false advertising of mortgagor); *Eby*, 2005 WL 1653988, at *3 (holding that narrowly drawn rental agreement was "not broad enough to cover torts arising out of the rental agreement."); *Underhill Inv. Corp. v. Fixed Income Discount Advisory Co.*, 319 Fed. Appx. 137, 141 (3d Cir. 2009) ("[B]y its express terms, the Letter limits the choice-of-law provision to claims arising from 'this Agreement.' [Appellant] pursues quasi-contract claims, not a pure contract claim arising under the Letter, and, therefore, the Letter's choice of law provision does not apply to this action.").

The court notes that some Delaware courts have disagreed with the analysis in *Gloucester*. In *Abry Partners V, LP v. F & W Acquisition LLC*, the court declined to examine whether the choice-of-law provision was narrow or broad, and instead reasoned that the law chosen to apply to contract claims should also apply to related tort claims. 891 A.2d 1032, 1046–48 (Del. Ch. 2006) ("Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship. To hold that their choice is only effective as to the determination of their contract claims, but not as to tort claims . . . would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid."). *See also Transdigm Inc. v. Alcoa Global Fasteners, Inc.*, No. 7135, 2013 WL 2326881, at *5 (declining to narrowly construe contract's choice-of-law provision). The Delaware Supreme Court has not yet ruled on the differing approaches.

[6] Because the Project was located in Delaware, Delaware law applies to the Cherry Hill Subcontract.

[7] Even if the court were to follow the line of cases which expanded narrow choice-of-law provisions to cover tort or quasi-contractual claims, the court would reach the same result. *See Abry Partners V, LP v. F & W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006). This case is distinguishable. Unlike cases where the claims arose from the relationship between the parties to the contract, this suit involves a conflict between two parties that were not parties

5

The court briefly turns to the "most significant relationship" test to determine whether Delaware or Pennsylvania should apply.[8] VSI alleges that IFIC mishandled its claim for payment for its work on the Project. The Project was located in Delaware (D.I. 1 at ¶ 6), but neither VSI nor IFIC is based in Delaware. VSI is a Pennsylvania limited liability company with its principal place of business in Hazelton, PA. (D.I. 1 at ¶ 1.) IFIC is a New Jersey corporation with a regional office in Norristown, PA. (*Id.* at ¶ 2.) IFIC underwrote and issued the Bond from its Pennsylvania office. (*Id.*, Ex J; D.I. 6 at 9.) VSI's claim under the Bond was submitted to IFIC's Pennsylvania office, and all of the communications between VSI and IFIC regarding the claim were transmitted to and from IFIC's Pennsylvania office. (D.I. 1, Exs. O, P.) Based on these facts, the court concludes that Pennsylvania has the most significant relationship to the parties. Because Pennsylvania does not recognize VSI's claims (*see infra* n.1), the court must dismiss VSI's case.

## V. CONCLUSION

For the foregoing reasons, IFIC's motion to dismiss is GRANTED.

Dated: September 22, 2015

UNITED STATES DISTRICT COURT

---

to the original agreement, regarding rights and responsibilities that arise independently from the original agreement. The court declines to stretch the Subcontract's choice-of-law provision to cover the Bond.

[8] Factors to be considered for the "most significant relationship" test include: "(a) the place the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws, § 145(2).